**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY | ) | |
| 7233 East Butherus Drive | ) | |
| Scottsdale, AZ  85260 | ) | Civil Action No. |
| Plaintiff, | ) | |
| | ) | **DECLARATORY JUDGMENT** |
| v. | ) | **COMPLAINT AND RESCISSION** |
| | ) | |
| DIMENSION GENERAL CONSTRUCTION | ) | |
| LLC | ) | |
| 7412 Shisler Street | ) | |
| Philadelphia, PA  19111 | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION

Plaintiff Nautilus Insurance Company ("Nautilus"), by and through its undersigned counsel, brings this action for declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and for rescission of its policy, and in support of the relief sought herein avers as follows:

### I.    SUMMARY

1.    Nautilus issued a commercial lines insurance policy (redacted) (the below-identified "Nautilus Policy") to its named insured, Defendant Dimension General Construction LLC ("Dimension").

2.    A true and correct copy of the Nautilus Policy (with premium information redacted) is attached hereto as "Exhibit 1".

3.    Due to Dimension's breach of its duty to cooperate and the resulting prejudice suffered by Nautilus, Nautilus seeks a declaration that it has no duty to defend or indemnify Dimension for the claims and damages asserted against Dimension in two underlying civil actions: (1) *Guido's Express Inc. a/k/a Key Pizza v. Stefanos Haviaras, et al.*, pending in the Pennsylvania

27516668v1

Court of Common Pleas, Philadelphia County, Case No. 221202637 (the "Guido Action"), and (2) *Seneca Insurance Co. as subrogee of The Haviaras Family v. 2331 E. York LLC, et al.*, Case No. 2:23-cv-02137, U.S. District Court, Eastern District of Pennsylvania (the "Seneca Action"). The Guido Action and the Seneca Action are collectively referred to herein as the "Underlying Actions".

4.     Nautilus has offered to defend Dimension in the Underlying Actions, but Dimension has not been cooperating with Nautilus or assigned defense counsel – prejudicing Dimension's defense and Nautilus.

5.     Nautilus also seeks a declaration that it may rescind the Nautilus Policy based on what appear to be Dimension's materially false statements in applying for the Nautilus Policy.

6.     Among other things, in applying for the Nautilus Policy, an insurance application signed by Dimension (the "Application") and submitted to Nautilus represented that Dimension does not perform any demolition work and that Dimension does not perform any excavation work.

7.     A true and correct copy of the Application signed by Dimension and submitted to Nautilus is attached hereto as "Exhibit 2".

8.     Upon information and belief, those representations were false.

9.     Accordingly, Nautilus also asks this Court to declare that the Nautilus Policy is void *ab initio*, and that Nautilus may therefore rescind the Nautilus Policy, on the basis that Dimension made material misrepresentations in the Application upon which Nautilus relied in issuing the Nautilus Policy.

## II.     THE PARTIES

10.     Nautilus is a citizen of the State of Arizona, as it is a corporation organized under the laws of Arizona, and its principal place of business is located at 7233 E. Butherus Dr., Scottsdale, Arizona.

2

11.     Upon information and belief, Defendant Dimension is a citizen of the Commonwealth of Pennsylvania, as it is a limited liability company organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Philadelphia, Pennsylvania.  Upon information and belief, no member of Dimension is a citizen of Arizona.

## III.   **JURISDICTION**

12.     The Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because the amount in controversy in this action exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the dispute in this action is between citizens of different states.

13.     The amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, because the limits of the Nautilus Policy exceed $75,000.00.

14.     The dispute in this action is between citizens of different states.

15.     Plaintiff Nautilus is a citizen of the State of Arizona.

16.     Upon information and belief, Dimension is a citizen of the Commonwealth of Pennsylvania.

17.     The Court also has jurisdiction over this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), because this action presents a case of actual controversy and seeks an order declaring the rights and other legal relations of the parties to this action.

## IV.   **VENUE**

18.     Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).

19.     Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(1) because Defendant Dimension resides in the Eastern District of Pennsylvania and is domiciled in the Commonwealth of Pennsylvania.

20.     Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action occurred in the Eastern District of Pennsylvania – in that (a) the Nautilus Policy was issued to Dimension within the Eastern District of Pennsylvania, (b) the underlying incident giving rise to this action occurred in the Eastern District of Pennsylvania, and (c) the Guido Action giving rise to this action is currently pending in the Philadelphia County Court of Common Pleas, which is encompassed by the Eastern District of Pennsylvania, and the Seneca Action giving rise to this action is currently pending in the U.S. District Court for the Eastern District of Pennsylvania.

## V.    FACTUAL BACKGROUND

### A.    Dimension's Application For The Nautilus Policy

21.     In or about May 2022, Dimension signed an "E-Z" Rate Contractors Program Application (the "Application") requesting liability insurance coverage for the proposed policy period of May 13, 2022 to May 13, 2023.

22.     In the Application, Dimension represented that, among other things, Dimension does not perform excavation work and that Dimension does not perform any demolition work.

23.     Specifically, Dimension responded as follows on the Application in response to Question 9:

**9.**   Do you perform excavation work? ☐ Yes ☒ No

24.     Dimension responded as follows on the Application in response to Question 10.b.:

**10.**  Do you perform any of the following? Explain "Yes" answers to the following questions in the remarks section below.

b. ☐ Yes ☒ No    Any demolition work?

4

25.     In reliance on those representations, as well as the other representations made in the Application, Nautilus, through its general agent Tapco, issued the below-described commercial general liability policy Nautilus Policy to Dimension, effective May 13, 2022 to May 13, 2023.

26.     However, upon information and belief, Dimension's representations in the Application were materially false.

27.     Nautilus suspects that Dimension was already performing and/or intended to perform demolition and excavation work at the time Dimension signed the Application.

28.     According to the below-described Guido Amended Complaint ("Guido Complaint"), at all times relevant to the September 14, 2022 collapse of the 2329 Building, a project involving demolition, excavation and construction work (the "Project") was taking place on property adjacent to the 2329 Building, located at 2331 E. York Street, Philadelphia, PA (the "2331 Property"). *See* Guido Complaint, ¶ 16, attached hereto as "Exhibit 3".

29.     According to the Guido Complaint, Dimension served as the excavation contractor on the Project, and possessed, controlled and/or supervised the excavation and removal of dirt and dumping at the 2331 Property. *Id.* ¶¶ 102, 103.

30.     If Dimension had represented in its Application for the Nautilus Policy that Dimension performed demolition and/or excavation work, the Nautilus Policy either would not have been issued, or it would have been issued on different terms and for an increased premium amount.

**B.      The Nautilus Policy**

31.     Nautilus, through Tapco, issued a commercial lines insurance policy to its named insured, Dimension General Construction LLC, bearing policy number NN1410590 for the policy period May 13, 2022 to May 13, 2023 (the "Nautilus Policy"). *See* Ex. 1.

27516668v1

32.    The Insuring Agreement of SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY of the Nautilus Policy provides, in pertinent part:

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

        **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

        **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will

6

> be deemed to have been known prior to the policy period.
>
>         * * *

*Id.*

33.    The Nautilus Policy defines "property damage" to mean:

> **17.** "Property damage" means:
>
>     **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
>     **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>
>         * * *

*Id.*

34.    The Nautilus Policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.*

35.    The Nautilus Policy defines "suit", in pertinent part, to mean "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged". *Id.*

36.    SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS of the Nautilus Policy describes the duties owed by Dimension under the Nautilus Policy, and provides, in pertinent part, as follows:

> **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**
>
>         * * *
>
>     **b.** If a claim is made or "suit" is brought against any insured, you must:
>
>         **(1)** Immediately record the specifics of the claim or "suit" and the date received; and
>
>         **(2)** Notify us as soon as practicable.

27516668v1

> You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
>
> **c.** You and any other involved insured must:
>
> **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
>
> **(2)** Authorize us to obtain records and other information;
>
> **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
>
> **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.
>
> * * *

*Id.*

37.    As used in the Nautilus Policy, the word "you" means the Named Insured shown in the Declarations (Dimension), and any other person or organization qualifying as a Named Insured under the Nautilus Policy. *Id.*

38.    Additionally, the Nautilus Policy contains an endorsement, entitled EXCLUSION – PUNITIVE OR EXEMPLARY DAMAGES (form L217 (06/17)) (the "Punitive Damages Exclusion"), which modifies the commercial general liability coverage part, and which provides:

> The following is **added** to **2. Exclusions** of **Section I**:
>
> This insurance does not apply to punitive or exemplary damages, including but not limited to those damages that may be imposed to punish a wrongdoer or to deter others from engaging in a similar behavior.

*Id.*

## C.    **The Guido Action**

39.    On April 28, 2023, Guido's Express Inc. a/k/a Key Pizza ("Guido's" or "Guido") filed a complaint in the Guido Action against Dimension and several other entities that performed

work on the Project, as well as the individual owners of a building located at 2329 E. York Street, Philadelphia, PA (the "2329 Building").

40.     A copy of the docket report for the Guido Action is attached hereto as "Exhibit 4".

41.     The Guido Action arises out of the September 14, 2022 collapse of the 2329 Building and damage to Guido's property.

42.     On January 19, 2024, Guido's filed an amended complaint (the "Guido Complaint") in the Guido Action against the same defendants, including Dimension. *See* Ex. 3.

43.     According to the Guido Complaint, Guido's was leasing the 2329 Building at the time of its collapse. *Id.* ¶ 10.

44.     The Guido Complaint avers that, on or around September 2, 2022, Dimension entered into a contract with the owner of the 2331 Property (the "2331 Owner") to perform excavation and hauling dirt and dumping services at the 2331 Property in connection with the Project. *Id.* ¶ 13.

45.     The Guido Complaint avers that, on June 10, 2022, the City of Philadelphia Department of Licenses and Inspections (the "City") issued a Violation Notice and Order to the 2331 Owner and the general contractor on the Project, PASP, LLC ("PASP"), which identified several violations relating to the Project and required the 2331 Owner and PASP to take certain actions to correct violations concerning the Project and the 2331 Property by July 14, 2022. *See id.* ¶¶ 22–24.

46.     The Guido Complaint avers that, on July 18, 2022, the City inspected the 2329 Building, and that on July 19, 2022, the City issued a Violation Notice and Order to the individual owners of the 2329 Building declaring the Building "unsafe" due to "bulging wall and star bolts",

27516668v1

and required the owners to make corrections or repairs to the 2329 Building by August 22, 2022. *See id.* ¶¶ 26, 27.

47.     The Guido Complaint avers that, on September 14, 2022, the City again inspected the 2329 Building, and that on September 15, 2022, the City issued another Violation Notice and Order to the individual owners of the 2329 Building declaring that the Building was "imminently dangerous" and in imminent danger of collapse. *See id.* ¶ 29.

48.     The Guido Complaint avers that the City's inspection report for the 2329 Building concluded that the exterior walls of the Building were bulging, not supported, not free of holes, cracks or breaks, and had loose materials not properly anchored or capable of supporting all loads. *See id.* ¶ 32.

49.     The Guido Complaint alleges that the 2331 Owner, PASP, Dimension and other defendants knew of the Violation Notice declaring the 2329 Building "imminently dangerous" but refused and/or failed to take any steps to repair or support the south wall of the 2329 Building. *See id.* ¶ 35.

50.     The Guido Complaint avers that, on September 14, 2022, the 2329 Building collapsed. *Id.* ¶ 36.

51.     The Guido Complaint avers that, at all times relevant to the Guido Complaint, Dimension served as the excavation contractor on the Project, and that it possessed, controlled and/or supervised the excavation and removal of dirt and dumping at the 2331 Property. *Id.* ¶ 103.

52.     The Guido Complaint asserts, in relevant part, causes of action against Dimension for negligence and *respondeat superior*. *See id.*

53.     The Guido Complaint alleges that Dimension performed its excavation work on the Project in a negligent manner. *See id.* ¶ 113.

27516668v1

54.     The Guido Complaint alleges that, as a result of the collapse of the 2329 Building, Guido's sustained damages in the form of loss of business property, loss of equipment and loss of past and future business income. *Id.* ¶ 37.

55.     The Guido Complaint alleges that Dimension's negligent acts and/or omissions caused or contributed to the damages sustained by Guido's. *See id.* ¶¶ 113, 118.

56.     The Guido Complaint seeks compensatory damages, delay damages and punitive damages in an amount in excess of $50,000.00, as well as interest and allowable costs of suit. *See id.*

**D.     Nautilus's Defense Of Dimension And Efforts To Obtain Dimension's Cooperation**

57.     Nautilus sent a reservation letter dated August 3, 2023 to Dimension advising that Nautilus would be providing a defense to Dimension in the Guido Action, subject to a full and complete reservation of its rights to deny coverage for the Guido Action under the Nautilus Policy and to withdraw that defense.

58.     A true and correct copy of Nautilus's reservation letter to Dimension, dated August 3, 2023, is attached hereto as "Exhibit 5".

59.     The August 3, 2023 reservation letter provided Dimension with the contact information of the defense counsel Nautilus retained to represent Dimension in the Guido Action, the law firm of Zarwin Baum DeVito Kaplan Schaer & Toddy P.C. *See* Ex. 5.

60.     Nautilus sent the August 3, 2023 reservation letter by first class mail and by certified mail, return receipt requested to the mailing address listed on both Dimension's underwriting application and the Nautilus Policy – 7412 Shisler Street, Philadelphia, PA 19111.

61.     The August 3, 2023 reservation letter was copied to Tapco (by email) and to Dimension's assigned defense counsel.

27516668v1

62.    On September 28, 2023, Nautilus sent Dimension a second letter reiterating that Nautilus appointed defense counsel to defend Dimension in the Guido Action, and advising that Dimension's failure to respond to defense counsel was severely hindering Nautilus's ability to defend Dimension in the Guido Action.

63.    A copy of Nautilus's September 28, 2023 letter to Dimension is attached hereto as "Exhibit 6".

64.    Nautilus sent the September 28, 2023 letter by first class U.S. mail to the mailing address listed on both Dimension's underwriting application and the Nautilus Policy – 7412 Shisler Street, Philadelphia, PA 19111 – copied to Tapco (by email).

65.    The September 28, 2023 reservation letter quoted language from the Nautilus Policy describing the duties owed by Dimension under the Policy when a lawsuit is filed against it – including Dimension's duty to cooperate with Nautilus in the investigation and defense of the claims asserted against Dimension in the lawsuit. *See* Ex. 6.

66.    The September 28, 2023 reservation letter advised Dimension that its failure to communicate with defense counsel concerning the Guido Action constitutes a violation of a condition of the Nautilus Policy, and reserved Nautilus's right to, among other things, disclaim coverage (both defense and indemnity) under the Nautilus Policy for the Guido Action and withdraw its defense of Dimension in the Guido Action based on Dimension's violation of a condition of the Nautilus Policy. *See id.*

67.    In addition, the September 28, 2023 letter urged Dimension to immediately contact defense counsel and comply with defense counsel's requests so that Nautilus can adequately defend Dimension in the Guido Action. *See id.*

27516668v1

68.    Dimension failed to respond to Nautilus's letter, or otherwise contact Nautilus or defense counsel.

69.    On October 20, 2023, Nautilus sent an e-mail to the general agent identified on the Nautilus Policy, Tapco, advising that Nautilus had not been able to get into contact with Dimension and requesting alternative contact information for Dimension.

70.    In response to Nautilus's October 20, 2023 email, Tapco informed Nautilus that Tapco had "not had any luck getting in touch with the insured [Dimension] for months and neither has anyone else".

71.    A copy of Tapco's October 20, 2023 email is attached hereto as "Exhibit 7".

72.    In or around October 2023, Nautilus instructed defense counsel to retain a private investigator to locate Dimension so that Nautilus and defense counsel could contact Dimension concerning the defense of Dimension.

73.    Through the use of the private investigator, defense counsel made numerous attempts to contact Dimension to discuss its defense in the Guido Action, but Dimension failed to respond.

74.    Among other things, defense counsel retained an investigator (at RC Services LLC) to attempt to locate Dimension.

75.    A copy of an April 22,2024 report prepared by R.C. Services, LLC describing its efforts to locate Dimension is attached hereto as "Exhibit 8".

76.    As reflected in the investigator's report (Ex. 8), the investigator made multiple attempts to locate Dimension or an individual by the name of Regis Rigo, the name reportedly on the contracts with the underlying Plaintiffs – including efforts to locate Dimension or someone associated with it on October 21 and 27, 2023, November 1, 14 and 21, 2023, December 7, 13, 20

27516668v1

and 29, 2023, January 3, 2024, February 6, 15 and 22, 2024, March 1 and 6, 2024, and April 8 and 16, 2024.

77.     On October 21, October 27, November 1 and November 14, 2023, the investigator attempted to locate Dimension at 7412 Shisler Street, Philadelphia, PA 19111.

78.     While, on several of those dates, mail was located in the foyer for Dimension General Construction and Isaque Lima, no one answered and the investigator left its business card.

79.     On November 14, 2023, Nautilus sent Dimension a third letter (sent via first class mail to its Shisler St. address, and copied to Tapco) reiterating the statements, reservations and requests it made in the September 28, 2023 letter.

80.     A copy of Nautilus's November 14, 2023 letter to Dimension is attached hereto as "Exhibit 9".

81.     Dimension failed to respond to Nautilus's November 14, 2023 letter, or otherwise contact Nautilus or defense counsel.

82.     Meanwhile, over the next few months, the private investigator continued its efforts to locate Dimension.

83.     On November 21, 2023, the investigator called Isaque Lima's phone number, but the number was out of service.

84.     On December 7, 13 and 20, 2023, the investigator attempted to located Dimension at 21 Chestnut Street, Newark, NJ 07102 – but the investigator did not locate Dimension at that address.

85.     During the December 20, 2023 visit, an individual by the name of Juanito Tigue advised the investigator that Dimension was not at that location and had moved about three years ago.

27516668v1

86.     Meanwhile, on December 15, 2023, Nautilus sent a fourth letter to Dimension (via both first class mail and by certified mail, return receipt requested, and copied to both Tapco and defense counsel) reiterating the information, reservations and requests set forth in its prior reservation letters concerning Dimension's failure to cooperate with defense counsel, and expressly reserving Nautilus's right to cancel the Nautilus Policy based on a potential material misrepresentation made in Dimension's underwriting application.

87.     A copy of Nautilus's December 15, 2023 letter to Dimension is attached hereto as "Exhibit 10".

88.     This time, Nautilus sent the December 15, 2023 letter – along with copies of the three (3) prior reservation letters it issued to Dimension – to the address provided on Dimension's underwriting application (the 7412 Shisler St. address), as well as to three (3) additional addresses gleaned from the public record that Dimension appears to have been associated with at some point in time (46 Irvine Turner Blvd., Newark, NJ; 21 Chestnut St., Newark, NJ; and 64-68 Hearthstone Ct., Upper Saddle River, NJ).

89.     Dimension failed to respond to Nautilus's December 15, 2023 letter, or otherwise contact Nautilus or defense counsel.

90.     On December 29, 2024, the investigator attempted to locate Dimension at 64-68 Hearthstone Ct, Upper Saddle River, NJ 07458 – but the addresses only went up to address 53 Hearthstone Ct., Upper Saddle River, NJ.

91.     On December 29, 2024, the investigator also attempted to locate Dimension at 46 Irvine Turner Blvd, Newark, NJ 07103 – but 46 Irvine Turner Blvd. did not exist.  The address goes from 48 Irvine Turner Blvd to 44 Irvine Turner Blvd.

27516668v1

92.     On January 3, 2024, the investigator returned to the location near where 46 Irvine Turner Blvd, Newark, NJ 07103 was expected to be located, spoke with a postal worker, and was informed that the postal worker did not recognize Dimension.

93.     One January 3, 2024, the investigator also made another visit to 7412 Shisler Street, Philadelphia, PA 19111 – but did not locate Dimension, and noticed the same pile of mail from its last visit.

94.     On February 6, 2024, and because the Plaintiffs' counsel claimed to have served Dimension in the Underlying Action by serving someone named "Maria" at the address of 1244 E. Cheltenham Ave., Philadelphia, PA. the investigator visited the 1244 E. Cheltenham Ave. location.

95.     During the investigator's first visit to the 1244 E. Cheltenham Ave. location, the house had lights on but no one came to the door.  The investigator located a yellow work van at the rear of the building and noticed that on the top of the truck was a shoot used in demolish work. The investigator left a business card and requested a return call.

96.     Upon information and belief, the investigator did not receive any return call.

97.     On February 15, 2024, the investigator visited the 1244 E. Cheltenham Ave. location a second time, noticed that the home had lights on but no one came to the door.  During this visit, the investigator noticed the same the yellow van, this time across the street.

98.     On February 22, 2024, the investigator returned to the 1244 E. Cheltenham Ave. location and spoke with a woman who identified herself as "Maria Silva".

99.     During the February 22, 2024 visit, Silva told the investigator that she received a visit from someone who served her with papers for Dimension, but she also informed the

investigator (and reportedly also the person attempting to serve papers on Dimension) that no one at the property was associated with Dimension and she denied knowing any Regis Rigo.

100.    On March 1 and 6, 2024, the investigator attempted to locate Dimension at 9501 Pine Road, Philadelphia, PA 19115 – but Dimension was not located.

101.    Subsequently, in April 2024, after a summary of service from Plaintiffs' counsel in the Guido's Action purported to reflect service of the Guido's Amended Complaint on Dimension at an address in Cliffside Park, NJ, the investigator also attempted to locate Dimension at that address.

102.    On April 8 and 16, 2024, the investigator attempted to locate Dimension at 402 Anderson Ave., Apt. 16, Cliffside Park, NJ 07010 – but did not locate Dimension or anyone connected to Dimension.

103.    To date, Dimension has failed to respond to any of Nautilus's or defense counsel's communications.

104.    Additionally, Dimension has failed to take any action in response to the claims asserted against it in the Guido Action.

**E.    Nautilus's Inability To Effectively Defend Dimension In The Guido Action**

105.    On March 6, 2024, defense counsel entered its appearance in the Guido Action on behalf of Dimension.  Ex. 4.

106.    On March 13, 2024, defense counsel filed preliminary objections on behalf of Dimension based on Guido's improper service of the Guido Complaint on Dimension.[1]  A copy of the preliminary objections is attached hereto as "Exhibit 11".

---

[1] Of note, defense counsel was able to file preliminary objections based on improper service because doing so did not require Dimension to sign a verification.

107.    On May 6, 2024, in response to defense counsel's preliminary objections, the Court in the Guido Action entered an Order relaxing the standard of service required to be made and permitting Guido to make alternative service on Dimension. Ex. 4.

108.    Specifically, the May 6, 2024 Order directed that service of the Guido Complaint be made on Dimension by mailing the Complaint to two separate addresses[2] – both of which Nautilus has sent the reservation letters to via First-Class Mail. *Id.*

109.    On May 17, 2024, Guido filed an Affidavit of Service affirming that, on May 10, 2024, it served the Guido Complaint on Dimension pursuant to the directions set forth in the Court's May 6, 2024 Order. *Id.*

110.    Accordingly, service of the Guido Complaint was made on Dimension on May 10, 2024, meaning the deadline for Dimension to respond to the Guido Complaint was May 30, 2024. Pa. R.C.P. 1026(a).

111.    In order for defense counsel to properly file an Answer to the Guido Complaint on behalf of Dimension, Dimension must sign a verification form – to be submitted in connection with the Answer – verifying that the averments set forth in the Answer are true. Pa. R.C.P. 1024(a).

112.    Because Dimension has failed to communicate with both Nautilus and defense counsel concerning the Guido Action, defense counsel cannot obtain the verification he needs from Dimension in order to file an Answer to the Guido Complaint.

113.    As such, defense counsel is not able to file an Answer to the Guido Complaint on behalf of Dimension.

---

[2] The addresses are 7412 Shisler Street, Philadelphia, PA 19111 (the address listed on Dimension's underwriting application and the Nautilus Policy), and 402 Anderson Avenue, Apt 16, Cliffside Park, NJ 07010 (the address to which Nautilus sent copies of all of its prior reservation letters in April 2024).

27516668v1

114.    The deadline for Dimension to file a response to the Guido Complaint has passed, meaning Guido is entitled to move for entry of a default judgment against Dimension based on Dimension's failure to file a pleading within the required time.  Pa. R.C.P. 1037(b).

115.    Absent communication with Dimension, defense counsel will not be able to adequately respond to any arguments Guido may make in support of its request for entry of a default judgment against Dimension.

116.    Thus, Dimension's complete failure to communicate with defense counsel and Nautilus has prevented, and will continue to prevent, defense counsel and Nautilus from defending Dimension in the Guido Action.

**F.    The Seneca Action**

117.    On or about January 17, 2024, Seneca Insurance Company ("Seneca"), in its capacity as subrogee of the Haviaras Family, filed an Amended Complaint (the "Seneca Complaint") in the Seneca Action against Dimension and others.

118.    A true and correct copy of the Seneca Complaint (without the exhibits thereto) is attached hereto as "Exhibit 12".

119.    Like the Guido Action, the Seneca Action arises out of the September 14, 2022 collapse of the 2329 Building.

120.    In the Seneca Complaint, Seneca avers that the collapse of the 2329 Building was caused by the  work that was being performed by Guido's and others on the Project at the 2331 Property. Ex. 12, ¶¶ 31, 109–113.

121.    According to the Seneca Complaint, Seneca issued an insurance policy to the Haviaras Family, which provided coverage for "property damages, loss and related expenses", and Seneca paid claims submitted by the Haviaras Family under the Seneca policy for damages sustained by them as a result of the collapse of the 2329 Building. *Id.* ¶¶ 14–15.

122.    In the Seneca Complaint, Seneca seeks to "recover amounts paid to its Insureds [the Haviaras Family]" for the damages claimed by the Haviaras Family as a result of the 2329 Building collapse, and alleges that such damages were caused by the defendants, including Dimension. *Id.* ¶ 16.

123.    The Seneca Complaint asserts two causes of action against Dimension: (1) negligence, and (2) respondeat superior.

**G.    Nautilus's Efforts To Obtain Dimension's Cooperation With Respect To The Seneca Action**

124.    On May 3, 2024, Nautilus sent a reservation letter to Dimension (by first class mail and by certified mail, return receipt requested) advising that Nautilus would be providing a defense to Dimension in the Seneca Action, subject to a full and complete reservation of its rights to deny coverage for the Seneca Action under the Nautilus Policy and to withdraw that defense.

125.    A true and correct copy of Nautilus's reservation letter to Dimension, dated May 3, 2024, is attached hereto as "Exhibit 13".

126.    The May 3, 2024 letter was addressed to Dimension at three different addresses: (a) 7412 Shisler St., Philadelphia, PA 19111; (b) 402 Anderson Ave., Apt. 16, Cliffside Park, NJ 07010; and (c) 1244 E. Cheltenham Ave., Philadelphia, PA 19123; and copied to Tapco and defense counsel.

127.    The May 3, 2024 reservation letter provided Dimension with the contact information of the defense counsel Nautilus retained to represent Dimension in the Seneca Action. *See* Ex. 13.

128.    The letter also reminded Dimension of its duty to cooperate under the Nautilus Policy, requested that Dimension cooperate with defense counsel, and asked Dimension to respond

to Nautilus's questions concerning apparent misrepresentations in Dimension's Application for the Nautilus Policy. *Id.*

129.    To date, Dimension has failed to respond to Nautilus's letters, or otherwise contact Nautilus or defense counsel.

130.    On June 28, 2024, Nautilus sent a fifth letter to Dimension (via both first class mail and by certified mail, return receipt requested, and copied to both Tapco) once again requesting Dimension's cooperation in both the Guido Action and the Seneca Action, and again expressly reserving Nautilus's right to cancel the Nautilus Policy based on a potential material misrepresentation made in Dimension's underwriting application.

131.    A copy of Nautilus's June 28, 2024 letter to Dimension is attached hereto as "Exhibit 14".

132.    This time, Nautilus sent the June 28, 2024 letter – to the address provided on Dimension's underwriting application (the 7412 Shisler St. address), as well as to five (5) additional addresses that Dimension was believed to have been associated with at some point in time:  46 Irvine Turner Blvd., Newark, NJ; 21 Chestnut St., Newark, NJ; 64-68 Hearthstone Ct., Upper Saddle River, NJ; 1244 E. Cheltenham Avenue, Philadelphia, PA  19124 and 402 Anderson Avenue, Apt 16, Cliffside Park, NJ  07010.

133.    To date, Dimension has not responded to Nautilus's letters or cooperated in its defense of either the Guido Action or the Seneca Action.

134.    If, as Dimension has done in the Guido Action, Dimension fails to cooperate with defense counsel in the Seneca Action, Nautilus will be prejudiced in that it will not be capable of providing a defense to Dimension in the Seneca Action.

27516668v1

## COUNT I – BREACH OF CONTRACT

135.    Nautilus realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

136.    Pursuant to SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 2. Duties In The Event Of An Occurrence, Offense, Claim or Suit (hereinafter referred to as the "Cooperation Condition") of the Nautilus Policy, if a claim is made or "suit" is brought against any insured (including, but not limited to, Dimension), the Named Insured (Dimension) has a duty to, among other things: notify Nautilus as soon as practicable; immediately send Nautilus copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"; authorize Nautilus to obtain records and other information; cooperate with Nautilus in the investigation or settlement of the claim or defense against the "suit"; and assist Nautilus in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.  Ex. 1.

137.    The Underlying Actions each constitutes a "suit", as that term is defined in the Nautilus Policy, because it is a civil proceeding seeking damages because of, among other things, "property damage" that was allegedly caused by an "occurrence" that took place in the "coverage territory", and that allegedly occurred during the Nautilus Policy's policy period.

138.    Thus, pursuant to the Nautilus Policy's Cooperation Condition, Dimension is obligated to perform all of the duties enumerated in the Cooperation Condition in connection with the Underlying Actions.

139.    As described in detail above, Dimension has failed to communicate with Nautilus or defense counsel regarding the Underlying Actions.

140.    Dimension did not notify Nautilus of the Underlying Actions.

27516668v1

141.     Additionally, Dimension has failed to cooperate with Nautilus in the investigation of the claims made in the Underlying Actions, and has failed to cooperate with Nautilus in Nautilus's defense of Dimension in the Underlying Actions.

142.     Accordingly, Dimension has breached its duty to cooperate under the Nautilus Policy.

143.     Under well-settled Pennsylvania law, an insured's breach of the duty to cooperate will relieve an insurer from liability under the policy where the insured's failure to cooperate is substantial and the insurer has suffered prejudice as a result. *See Forest City Grant Liberty Assocs. v. Genro II*, 652 A.2d 948, 951–52 (Pa. Super. Ct. 1995).

144.     An insured's duty to cooperate is breached where the insured "neglects to disclose information needed by the insurer to prepare a defense, does not aid in securing witnesses, refuses to attend hearings or to appear and testify at trial or otherwise fails to render all reasonable assistance necessary to the defense of the suit." *See id.* (internal quotation omitted).

145.     Under Pennsylvania law, an insured's failure to cooperate is prejudicial where it "fails to allow the insurance company to participate meaningfully in legal proceedings that may result in its payment of the claim at issue". *See Champion v. Chandler*, No. 96-CV-7263, 1999 U.S. Dist. LEXIS 15824, at *6 (E.D. Pa. September 28, 1999).

146.     As described above, Dimension has breached its duty to cooperate because it has failed to disclose information needed by Nautilus to prepare the defense of Dimension in the Underlying Actions, and has "otherwise fail[ed] to render all reasonable assistance necessary to the defense" of the Underlying Actions. *See Forest City Grant Liberty Assocs.*, 652 A.2d at 951–52.

27516668v1

147.    Additionally, as described above, Dimension's failure to cooperate has prevented Nautilus from "participat[ing] meaningfully in legal proceedings that may result in its payment of the claim at issue". *See Champion*, 1999 U.S. Dist. LEXIS at *6.

148.    Thus, Dimension's failure to cooperate is substantial, and Nautilus has suffered prejudice as a result.

149.    Accordingly, Dimension's breach of its duty to cooperate under the Nautilus Policy has relieved Nautilus of its duty to defend Dimension under the Nautilus Policy for the claims asserted in the Underlying Actions.

150.    As such, Nautilus is entitled to a declaration that it has no duty to defend Dimension in either the Guido Action or the Seneca Action.

**WHEREFORE**, Nautilus respectfully requests that the Court grant judgment in favor of Nautilus and against Dimension and enter an Order:

(a) Declaring that Nautilus has no duty under the Nautilus Policy to defend Dimension in the Guido Action and the Seneca Action;

(b) Declaring that Nautilus has no duty under the Nautilus Policy to indemnify Dimension in the Guido Action and the Seneca Action; and

(c) Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief available at law or in equity to which Nautilus may be entitled and which the Court deems just and proper.

## COUNT II – DECLARATORY JUDGMENT
### (Nautilus Has No Duty To Defend Dimension In The Underlying Actions)

151.    Nautilus realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

152.    As explained above, Dimension's duty to cooperate is a condition precedent to coverage under the Nautilus Policy.

27516668v1

153.     As explained above, Dimension has breached its duty to cooperate under the Nautilus Policy by, *inter alia*, wholly failing to cooperate with Nautilus in Nautilus's defense of Dimension in the Underlying Actions.

154.     Thus, Dimension has violated a condition precedent to coverage under the Nautilus Policy.

155.     As explained above, Nautilus has suffered prejudice as a result of Dimension's breach of its duty to cooperate, in that Dimension's breach of its duty to cooperate has prevented Nautilus from adequately defending Dimension in both the Guido Action and the Seneca Action.

156.     Accordingly, Dimension's breach of its duty to cooperate has relieved Nautilus of any duty it may have had to defend Dimension in the Underlying Actions.

157.     As such, Nautilus is entitled to a declaration that it has no duty to defend Dimension in the Underlying Actions.

**WHEREFORE**, Nautilus respectfully requests that the Court enter an Order:

(a) Declaring that Nautilus has no duty under the Nautilus Policy to defend Dimension in the Guido Action and the Seneca Action;

(b) Declaring that, because Nautilus has no duty to defend Dimension in the Underlying Actions, Nautilus is entitled to withdraw its defense of Dimension in both the Guido Action and the Seneca Action; and

(c) Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief available at law or in equity to which Nautilus may be entitled and which the Court deems just and proper.

## COUNT III – DECLARATORY JUDGMENT
### (Nautilus Has No Duty To Indemnify Dimension For Any Amounts It May Become Obligated To Pay As A Result Of The Underlying Actions)

158.     Nautilus realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

27516668v1

159.    As explained herein, Dimension has a duty under the Nautilus Policy to cooperate with Nautilus in the investigation of the claims made in the Underlying Actions, and to cooperate with Nautilus in its defense of Dimension in the Underlying Actions.

160.    As explained herein, Dimension breached its duty to cooperate under the Nautilus Policy.

161.    As explained herein, Nautilus has been prejudiced as a result of Dimension's breach of its duty to cooperate in that Dimension's failure to cooperate has rendered Nautilus incapable of adequately defending Dimension in the Underlying Actions.

162.    As such, Nautilus is relieved of any duty it may have had to indemnify Dimension under the Nautilus Policy for any amounts Dimension may become obligated to pay as a result of the Guido Action and/or the Seneca Action.

163.    Additionally, as described above, the Guido Complaint seeks punitive damages against Dimension.

164.    Pursuant to the Nautilus Policy's Punitive Damages Exclusion, coverage is not available under the Nautilus Policy for punitive or exemplary damages. Ex. 1.

165.    As such, Nautilus has no duty to indemnify Dimension for any punitive damages it may become obligated to pay as a result of the Guido Action.

**WHEREFORE**, Nautilus respectfully requests that the Court enter an Order:

(a) Declaring that Nautilus has no duty under the Nautilus Policy to indemnify Dimension for any amounts it may become obligated to pay as a result of the Guido Action or the Seneca Action, including but not limited to any judgment or settlement therein; and

(b) Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief available at law or in equity to which Nautilus may be entitled and which the Court deems just and proper.

## COUNT IV – RESCISSION

166. Nautilus realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

167. Upon information and belief, Dimension made one or more false representations of fact in applying for the Nautilus Policy.

168. As noted above, in or about May 2022, Dimension signed the Application requesting liability insurance coverage for the proposed policy period of May 13, 2022 to May 13, 2023.

169. In the Application, Dimension represented that, among other things, Dimension does not perform excavation work and that Dimension does not perform demolition work.

170. In reliance on those representations, and the other representations in the Application, Nautilus, through its agent Tapco, issued the Nautilus Policy to Dimension.

171. However, upon information and belief, one or more of the representations made in the Application were false.

172. Both the Seneca Complaint and the Guido's Amended Complaint allege that Project involved demolition.

173. Both the Seneca Complaint and the Guido's Amended Complaint allege that Dimension had knowledge of the demolition and/or supervised and/or demolished the structure at 2331 E. York Street and caused damage to the south wall of 2329 York.

174. Both the Seneca Complaint and the Guido's Amended Complaint allege that 2331 LLC entered into a contract with Dimension for Dimension to perform excavation work.

175.    And, both the Seneca Complaint and the Guido's Amended Complaint allege that the City of Philadelphia Department of License and Inspections issued Violation Notices and Orders in June 2022, before the September 14, 2022 collapse.

176.    Given the allegations in the Underlying Actions, including allegations that the Master Contract for this Project was dated May 20, 2022 and that the work performed by Dimension was not carpentry (the work Dimension stated that it did 100% on the Application), Nautilus suspects that Dimension was already performing and/or intended to perform demolition and/or excavation work at the time Dimension completed the Application.

177.    Upon information and belief, Dimension was already performing and/or intended to perform demolition and/or excavation work at the time Dimension completed the Application.

178.    The suspected misrepresentations on the Application were material to the risk insured under the Nautilus Policy.

179.    Specifically, if Dimension had represented in the Application that it performs/intends to perform excavation and/or demolition work, Nautilus either would not have issued the Nautilus Policy to Dimension, or it would have included different terms in, and charged a higher premium for, the Nautilus Policy.

180.    Under Pennsylvania law, an insurance policy is void *ab initio* – and an insurer may rescind the policy – where the insured knowingly made a false representation on its insurance application and the misrepresentation was material to the risk being insured.   *See Associated Elec. & Gas Ins. Servs. v. Rigas*, 382 F. Supp. 2d 685, 690–91 (E.D. Pa. 2004); *see also Baldwin v. Prudential Ins. Co.*, 258 A.2d 660, 661 (Pa. Super. Ct. 1969); *Allstate Ins. Co. v. Stinger*, 163 A.2d 74, 76–77 (Pa. 1960).

27516668v1

181.    As stated above, upon information and belief, Dimension knowingly made one or more false representations on the Application, and those misrepresentations were material to the risk being insured by Nautilus.

182.    Nautilus, through its agent Tapco, reasonably and justifiably relied upon Dimension's Application, and the misrepresentations made therein, in underwriting and issuing the Nautilus Policy.

183.    As such, under Pennsylvania law, the Nautilus Policy is void *ab initio*, and Nautilus is entitled to rescind the Nautilus Policy.

184.    Should the Court determine that the Nautilus Policy is void *ab initio*, and that Nautilus may therefore rescind the Nautilus Policy, Nautilus is willing to return to Dimension the premium paid by Dimension for the Nautilus Policy.

**WHEREFORE**, Nautilus respectfully requests that the Court enter an Order:

(a)    Declaring that the Nautilus Policy is void *ab initio*, and that Nautilus may therefore rescind the Nautilus Policy based on misrepresentations made by Dimension  in applying for the Nautilus Policy;

(b)    Declare that Nautilus has no duty under the Nautilus Policy to defend or indemnify Dimension in the Underlying Actions;

(c)    Declaring that, because Nautilus has no duty to defend Dimension in the Underlying Actions, Nautilus is entitled to withdraw its defense of Dimension in the Guido Action; and

(d)    Ruling that Nautilus is entitled to reimbursement from Dimension for all fees and costs incurred by Nautilus in defending Dimension in the Guido Action and awarding Nautilus all such fees and costs; and

(e)    Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief available at law or in equity to which Nautilus may be entitled and which the Court deems just and proper.

27516668v1

## DEMAND FOR TRIAL BY JURY

Nautilus hereby demands a trial by jury of issues so triable.

Respectfully submitted,
**POST & SCHELL, P.C.**

By: _/s/ Anthony L. Miscioscia_

Dated:  July 3, 2024

ANTHONY L. MISCIOSCIA, ESQ.
Atty I.D. No. 69215
RACHEL L. ARMELY, ESQ.
Atty I.D. No. 332911
Three Logan Square
1717 Arch Street, 24th Floor
Philadelphia, PA  19103
Phone: (215) 587-1170
amiscioscia@postschell.com
rarmely@postschell.com
_Attorneys for Plaintiff  Nautilus Insurance Company_